The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FERRARI FINANCIAL SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRENT BIGGS,<br><br>Defendant. | Case No. 3:19-cv-05873-TSZ<br><br>**DECLARATION OF PATRICK GRANGER IN SUPPORT OF PLAINTIFF FERRARI FINANCIAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT** |

I, Patrick Granger, declare as follows:

1. I am a Director of Operations at Ferrari Financial Services, Inc, ("**FFS**") the plaintiff in the above-captioned suit against Brent Biggs ("**Defendant**.")

2. I have personal knowledge of the facts set forth herein, and I would competently testify to them if called upon to do so in a court of law.

3. My personal knowledge of this matter is derived from reviewing FFS's records of the transactions between FFS and Defendant Brent Biggs ("Biggs"). I am generally familiar with FFS's record-keeping practices and its practices for preparing and maintaining account documents. I am personally familiar with FFS's electronic document repository system, in which



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

electronic copies of FFS's records are kept and maintained, and I routinely use these systems in the regular course of business.

4. I submit this Declaration in support of *Plaintiff's Motion for Summary Judgment and Memorandum in Support*, filed concurrently herewith.

5. On or about August 13, 2015, Biggs and Ferrari & Maserati of San Diego, a non-party, entered into that certain Motor Vehicle Lease Agreement (Open-End) ("Lease") relating to the lease of a 2015 Ferrari California, VIN # ZFF77XJAXF0211016 (the "Vehicle"). A true and correct copy of the Lease is attached as **Exhibit 1.** In accordance with its obligations under the terms of the Lease, FFS provided the use of the vehicle to Biggs.

6. Upon execution, Ferrari & Maserati of San Diego assigned the Lease to FFS.

7. Pursuant to the Lease, and beginning on August 13, 2015, Biggs agreed to make monthly installment payments to FFS in the amount of $2,812.78 for sixty (60) months. *See id.*, at § 4.

8. Biggs could terminate the Lease early by surrendering the Vehicle to a location selected by FFS and paying the Early Termination Liability. *See id.*, at § 24.

9. With an Open-End Lease Agreement such as this, Defendant also agreed to pay to FFS certain fees in the form of a balloon payment at the end of the term of the Lease Agreement, including a termination fee, all amounts due and unpaid under the Lease Agreement, and the amount by which the Vehicle's Residual Value[1] plus out-of-pocket sale and repair costs exceeded the Vehicle's Realized Value. (Lease Agreement at § 28.)

[1] All capitalized terms not defined take their definitions as stated in the Lease Agreement.



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

10. Also pursuant to the Lease, Biggs agreed that the Early Termination Liability would be equal to the sum of: (1) all amounts due and unpaid under the Lease, plus (2) the amount by which the Adjusted Lease Balance (as defined therein) plus FFS's actual out-of-pocket sale and repair costs exceeds the Realized Value (as defined therein). *See id.*, at § 25.

11. Under the terms of the Lease, Biggs was in default of the Lease if he failed to make payments when due, or breached any other Lease term or condition. *See id.*, at § 32.

12. Upon default, Biggs agreed to pay FFS's repossession and storage expenses, reasonable attorneys' fees and court costs, and default interest at the rate of 18% per year or such lesser amount as required by law. (Lease Agreement at § 33.)

13. Biggs reported a change of address to the Grapeview Property to FFS in October 2016 in conjunction with his October 2016 payment, and FFS sent subsequent mail to 870 E Mason Lake Dr S, Grapeview, WA 98546 ("Grapeview Property"), in accordance with Biggs' specific request. A true and correct copy of the change of address is attached hereto as **Exhibit 2.**

14. Biggs failed to make required payments when due under the Lease Agreement, and on September 26, 2017, FFS sent Biggs a Notice of Default, Right to Cure, and Intent to Repossess ("RTC"). A true and correct copy of the RTC is attached as **Exhibit 3.**

15. The RTC indicated that Biggs had failed to comply with the terms of the Lease. *Id.*

16. The RTC also states that if the payments are made within 11 days of the date of the letter, then Biggs could continue with the contract as though he were not late. *Id.*



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

17. The RTC also clearly states that if Biggs were to be late again in making payments, then Ferrari may exercise its rights without sending another RTC notice. *Id*.

18. Biggs made the payment requested by the RTC on October 6, 2017, which was processed on October 11, 2017. A true and correct copy of the Payment History is attached as **Exhibit 4** to this Declaration.

19. The next payment was due on October 13, 2017. Biggs failed to make that payment by the due date. *See* **Exhibit 4**.

20. Biggs made additional payments which were untimely in November 2017, and December 2017, but failed to bring the Lease current during those months, and failed to make any payments after December 27, 2017. *See* **Exhibit 4**.

21. Because no payments were made after December 27, 2017, the Lease remained in default.

22. At the time that Vehicle was surrendered on February 1, 2018, Biggs was two full payments behind on the account.

23. Also, Biggs never contacted FFS to advise that the vehicle had been stolen and driven to another state.

24. The Lease Agreement states that if the Vehicle is stolen, the lessee is required to advise FFS immediately. (Lease Agreement at § 29A.)

25. The Lease Agreement also states that if the vehicle is lost, stolen, or confiscated, the Lease terminates early, and the lessee will be liable for an amount equal to the sum of all amounts due and unpaid under the Lease plus the amount by which the Adjusted Lease Balance exceeds the proceeds of the Insurance on the Vehicle. *Id.*



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

26. The Lease Agreement also prohibits the lessor from allowing anyone under the age of 25 to operate the Vehicle. (Lease Agreement at § 20.)

27. Internet information that I reviewed for Jacob Wills, including his arrest records, which are publicly available on the Internet, as well as his public social media information, indicate that Wills was 24 years of age in 2017. A true and correct copy of the Internet Information for Jacob Wills is attached as **Exhibit 5** to this Declaration.

28. If Biggs gave Wills permissive use to operate the Vehicle in 2017, this also constitutes a breach of the Lease Agreement, because Wills was under the age of 25 in 2017. *Id.*

29. On or around February 1, 2018, the Vehicle was delivered by an unknown person in damaged condition and left without a key at a Ferrari dealership in Houston, Texas.

30. Representatives of FFS attempted to contact Biggs via phone regarding the Vehicle, but Biggs did not answer the calls.

31. Biggs also did not respond to voicemails left on his phone.

32. Because Biggs did not respond to phone calls regarding the vehicle, and was in payment default on the Lease Agreement, FFS classified the Vehicle as voluntarily surrendered under the terms of the Lease.

33. On or about February 13, 2018, FFS sent a Notice of Rights of Defaulting Parties and of Disposition of Vehicle Following Lessee's Early Termination of Lease Contract ("NOR") pursuant to the California Vehicle Leasing Act §2987(d)(2) ("CVLA") to Biggs. A true and correct copy of the NOR is attached as **Exhibit 6.**[2].

[2] The U.S. Post Office was apparently unable to deliver the NOI, and returned it to FFS on May 1, 2018, which was after the Vehicle was sold at auction.



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

34. The NOR informed Biggs that the Vehicle would be sold by private sale within 21 days, or on or after March 6, 2018[3], unless Biggs purchased the Vehicle from FFS prior to this date. *See* **Exhibit 6**.

35. Biggs did not seek to purchase the Vehicle, or contact FFS for any reason, from the time the Vehicle was surrendered on February 1, 2018 to March 6, 2018.

36. On or about April 17, 2018, FFS sold the Vehicle in a commercially reasonable manner at a private sale for $85,205.00[4].

37. Attached to this declaration is information pertaining to the sale of the vehicle, including correspondence from Manheim Auto Auction (FFS's third party agent for the sale of used vehicles), as well as a Lease Close Out Form completed at the time of the sale. This information pertains to the sale of the vehicle in April 2018, and documents the damage the vehicle sustained at the time that it arrived at the Ferrari dealer in Houston. A true and correct copy of the correspondence and vehicle inventory is attached hereto as **Exhibit 7** and is incorporated herein by reference.

38. On or about June 7, 2018, FFS sent a Deficiency/Surplus Explanation ("Deficiency Notice") to Biggs. A true and correct of the Deficiency Notice is attached hereto as **Exhibit 8.**

39. Biggs did not respond to the Deficiency Notice.

---

[3] While the NOR advised Biggs that the Vehicle would be sold within 21 days, the actual time period prescribed by the CVLA, and the time period that FFS is required to hold the vehicle, is 10 days. See §2987(d)(2). Regardless, Biggs did not contact FFS at any point regarding the vehicle after it was turned on or about February 1, 2018.

[4] The Vehicle was contracted for sale by FFS's agent, Manheim, to a prospective buyer, on February 26, 2018, but the sale was not consummated, no payment was made by the prospective buyer, and title to the Vehicle did not transfer. The Vehicle was ultimately sold and disposed of on or around April 17, 2018.



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

40. On September 24, 2018, representatives of FFS sent an email to the email address on file for Biggs to advise again of the deficiency balance. A true and correct copy of the September 24 email correspondence is attached as **Exhibit 9.**

41. Biggs did not respond to the September 24, 2018 email correspondence.

42. On April 24, 2019, FFS's counsel sent a letter to Biggs stating that he remained in default under the Lease due to his failure to pay the Deficiency Balance and demanding that Biggs remedy his default under the Lease by May 4, 2019. A true and correct copy of the April 24, 2019 correspondence is attached as **Exhibit 10.**

43. Biggs did not respond to the April 24, 2019 correspondence.

44. FFS has performed all the conditions, covenants, and promises required of it under the terms of the Lease. Biggs remains in default of his obligations under the Lease. Interest and fees continue to accrue. To date, the total recoverable principal balance due and unpaid under the Lease Agreement is $106,317.94 plus accrued interest, default interest, and attorneys' fees and costs.

45. Defendant has repeatedly failed and refused to cure his default under the Lease Agreement.

46. FFS has incurred ongoing attorney's fees and other costs and expenses enforcing the Lease Agreement against Defendant, in addition to attempting to collect the amounts due and owing from Defendant.

Pursuant to 28 U.S.C. § 1746 *et seq.*, I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>July 28, 2022</u>, at <u>Englewood Cliffs, NJ.</u>



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055

/s/ [signature]
Patrick Granger



SNELL & WILMER
2018 156th Avenue, NE
Suite 100
Bellevue, Washington 98007
425.748.5055