# EXHIBIT 1

FINANCIAL SERVICES

# MOTOR VEHICLE LEASE AGREEMENT (OPEN-END)
## CALIFORNIA

Lease Date 08/13/2015

The words "I", "me" and "my" in this Motor Vehicle Lease Agreement (Open-End) ("Lease") refer to the Lessee(s). The words "you" and "your" in this Lease refer to the Lessor and to anyone to whom this Lease may be assigned. I agree to lease the Leased Vehicle described below ("Vehicle") according to the terms on the front and back of this Lease. I agree to make payments due under this Lease to the address on your invoice or as otherwise directed by you. You are making the disclosures on your behalf and on behalf of the Assignee identified in the Acceptance and Assignment section below. I WILL HAVE NO EQUITY OR OWNERSHIP RIGHTS IN THE VEHICLE, UNLESS I PURCHASE THE VEHICLE UNDER THE TERMS OF MY PURCHASE OPTION.

DEAL# 6733 [redacted]0791

**1. LESSEE AND LESSOR**

| Lessee(s) - Name(s) and Billing Address | Lessor - Name and Address |
|---|---|
| BRENT D BIGGS | FERRARI & MASERATI OF SAN DIEGO |
| Street 36 ADMIRALTY CROSS City CORONADO | Street 7477 GIRARD AVE City LA JOLLA |
| County SAN DIEGO State CA Zip 92118 | County SAN DIEGO State CA Zip 92037 |
| Vehicle Garaging Address (if different) | Driver (if business lessee) |

**2. VEHICLE DESCRIPTIONS**

A. LEASED VEHICLE New, Used NEW Year 2015 Make FERRARI Model CALIFORN VIN ZFF77XJAXF0211016
Color NERO.DS Body Style ______ Odometer Reading 56 The Vehicle will be used primarily for personal, family or household purposes. If the following box is checked, the Vehicle will be used primarily for business or commercial purposes: ☐

B. TRADE-IN VEHICLE Year N/A Make N/A Model N/A

C. FOR USE BY LESSOR. Additional trade-in, turn-in and other individualized agreements.

N/A

| 3. Amount Due at Lease Signing | 4. Monthly/Single Payments | 5. Other Charges (not part of my Monthly Payment) | 6. Total of Payments |
|---|---|---|---|
| (Itemized below)* $ 24000.00 | A. My first Monthly/Single Payment of $ 2812.78 is due on 08/13/15 followed by 59 payments of $ 2812.78 due on the 13TH of each month. B. The total of my Monthly Payments or my Single Payment is $ 168766.80 | A. Termination Fee (if I do not purchase the Vehicle) $ 995.00<br>B. N/A N/A<br>C. N/A N/A<br>D. Total $ 995.00 | (The amount I will have paid by the end of the Lease) $ 188124.02<br>I will owe an additional amount if the actual value of the Vehicle is less than the Residual Value. |

**7. *Itemization of Amount Due at Lease Signing or Delivery**

| A. Amount Due at Lease Signing: | |
|---|---|
| 1. Capitalized Cost Reduction | $ 15365.02 |
| 2. Tax on Capitalized Cost Reduction | $ 1229.20 |
| 3. First Monthly Payment/Single Payment | $ 2812.78 |
| 4. Refundable Security Deposit | $ 2825.00 |
| 5. Acquisition Fee | $ N/A |
| 6. Title and Registration Fees | $ 1732.00 |
| 7. Maintenance Plan | $ N/A |
| 8. Service Contract | $ N/A |
| 9. Document Preparation Fee (not a governmental fee) | $ N/A |
| 10. Other (specify) TIRE FEE DMVDESK | $ 36.00 |
| 11. Total | $ 24000.00 |

| B. How the Amount Due at Lease Signing will be paid: | |
|---|---|
| 1. Net trade-in allowance | $ N/A |
| 2. Rebates and noncash credits | $ N/A |
| 3. Amount to be paid in cash | $ 24000.00 |
| 4. Total | $ 24000.00 |

**8. My Monthly Payment or Single Payment is determined as shown below:**

| | |
|---|---|
| A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 251923.00) and any items I pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) | $ 253498.00 |
| B. **Capitalized Cost Reduction.** The amount of any rebate, cash payment, net trade-in allowance or noncash credit I pay that reduces the Gross Capitalized Cost | − $ 15365.02 |
| C. **Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly/Single Payment | = $ 238132.98 |
| D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly/Single Payment | − $ 128000.00 |
| E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term or in my Single Payment | = $ 110132.98 |
| F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts | + $ 46132.82 |
| G. **Total of Base Monthly/Single Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge | = $ 156265.80 |
| H. **Lease Payments.** The number of payments in my Lease (Lease Term: 60 months) | ÷ 60 |
| I. **Base Monthly/Single Payment** | = $ 2604.43 |
| J. **Sales/Use Tax** | + $ 208.35 |
| K. **Other (specify)** | + $ N/A |
| L. **Total Monthly Payment ("Monthly Payment") Total Single Payment ("Single Payment")** | = $ 2812.78 |
| M. **Rent and Other Charges.** The total amount of Rent Charge and Other Charges in connection with my Lease (Section 8(F) plus 5(D)) | $ 47127.82 |

**Early Termination. I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

9. **Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of 7500 miles per year at the rate of 1.75 per mile.

10. **Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus a Purchase Option Fee of $ 1495.00 and applicable taxes.

**Other Important Terms.** See the lease document for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | |
|---|---|
| A. Agreed Upon Value of Vehicle | $ 251923.00 |
| B. Sales/Use Tax | $ N/A |
| C. Initial Title, Registration and License Fees | $ N/A |
| D. Outstanding Prior Credit or Lease Balance | $ N/A |
| E. Acquisition Fee | $ 1495.00 |
| F. Service Contract | $ N/A |
| G. Document Preparation Fee (not a governmental fee) | $ 80.00 |
| H. Agreed upon Value of Accessories/Optional Equipment (to be added after lease signing): | |
| 1. N/A | $ N/A |
| 2. N/A | $ N/A |
| I. Other (Describe Item) N/A | $ N/A |
| J. Total = Gross Capitalized Cost | $ 253527.00 |

**12. ESTIMATED OFFICIAL FEES AND TAXES**

These are amounts payable over the Lease Term and are estimated. Any taxes and fees payable at Lease Signing or Delivery or added to the Base Monthly/Single Payment are included in this amount. The actual total amount for fees and taxes will be determined by the tax rates and fees in effect during the Lease Term.

| | |
|---|---|
| A. Title, License, Registration & Official Fees | $ 8660.00 |
| B. Use or Rental Receipts Tax | $ 13730.20 |
| C. Personal Property Tax | $ N/A |
| D. Emission/Safety Tax Fee | $ N/A |
| E. Other (specify) N/A | $ N/A |
| F. Total of Estimated Fees and Taxes | $ 22390.20 |

**13. OPTIONAL MAINTENANCE PLAN OR SERVICE CONTRACT**

Although I am not required to do so, I may choose to buy a Maintenance Plan and/or a Service Contract by initialing in the application area(s) below. A Maintenance Plan covers certain factory scheduled maintenance. A Service Contract covers the repair of certain major mechanical breakdowns of the Vehicle and related expenses. I will refer to the Maintenance Plan or Service Contract for details about coverage and duration. ***YOU MAKE NO WARRANTY AS TO THE MAINTENANCE PLAN OR SERVICE CONTRACT OR THEIR ADMINISTRATORS' AND UNDERWRITERS' PERFORMANCE AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, AS TO THIS SERVICE.*** I agree to make any inquiries to, and to seek any remedies for nonperformance solely from the Maintenance and/or Service Administrator/Underwriter and not from the Assignee or Lessor.

Maintenance Plan Price $ N/A Term: N/A Months or N/A Miles

Maintenance Plan Administrator N/A Initials ______

Service Contract Price $ N/A Term: N/A Months or N/A Miles

Service Contract Administrator N/A Initials ______

**14. POWER OF ATTORNEY**

I authorize you, on my behalf, to settle or release any claims for damage to the Vehicle and sign my name on any checks, drafts, or claim forms under my insurance for damage to the Vehicle. I also authorize you to sign any forms for registering or titling the Vehicle.

**15. WARRANTY LIMITATIONS**

A. **Manufacturer's Warranties.** If the Vehicle is a new vehicle, it is covered by the manufacturer's limited warranty and I will have the rights under that warranty. If the Vehicle is a used vehicle and the manufacturer's warranty section below is completed, it is covered by the manufacturer's warranty for the indicated remaining months/miles and I will have the warranty rights for that period.

**Manufacturer's Warranty:** ______ months ______ miles

B. **Lessor's Warranties.** ***UNLESS APPLICABLE LAW REQUIRES OTHERWISE, YOU MAKE NO WARRANTIES REGARDING THE VEHICLE, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND I AM LEASING THE VEHICLE "AS IS."*** However, if the Vehicle is a used vehicle and a box is checked below, the original Lessor and not the Assignee makes the warranty indicated.

**Lessor's Warranty:** ☐ Full ☐ Limited ______

I agree to continue making all of my payments without set-off, counterclaim or recoupment during any dispute about the Vehicle's condition or performance, the manufacturer's warranty or any dispute with you, except as otherwise provided by law. I agree that no Assignee is responsible for the statements, actions or repairs of the original Lessor or any other dealer relating to the Vehicle. YOU SHALL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

**16. ENTIRE AGREEMENT:** This Lease sets forth all of the agreements between you and me for the lease of the Vehicle. There is no other agreement. Any changes in the Lease must be in writing and signed by you and me.

X [signature] LESSEE SIGNATURE — X ______ CO-LESSEE SIGNATURE

**CERTIFICATION FOR TAX PURPOSES:** If this Lease indicates that the Vehicle will be used primarily for business or commercial purposes, Lessee certifies under penalty of perjury that it intends that more than 50% of the use of the vehicle will be in its trade or business and that it understands that Lessee will not be treated as the owner of the vehicle for tax purposes. The Lessor has no knowledge that this certification is false in any material respect.

X [signature] LESSEE SIGNATURE — X ______ CO-LESSEE SIGNATURE

For the following notices, "you" means the Lessee(s)

**You have the right to return the Vehicle, and receive a refund of any payments if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

**GAP LIABILITY NOTICE**

**In the event of theft or damage to the Vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.**

**THERE IS NO COOLING OFF PERIOD**

**California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the Vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the lessor or for legal cause, such as fraud.**

**Notice to the Lessee: Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (1) You are entitled to a completely filled in copy of this Lease; (2) Warning–Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

X [signature] LESSEE SIGNATURE — X ______ CO-LESSEE SIGNATURE

PRINT NAME AND TITLE (IF CORPORATION) — PRINT NAME AND TITLE (IF CORPORATION)

**ACCEPTANCE AND ASSIGNMENT.** By signing below, the Lessor accepts this Lease with me. The Lessor also hereby assigns its interest in the Lease and the Vehicle to Ferrari Financial Services, Inc. ("FFS") or an assignee designated by FFS. The Lessor's assignment of this Lease is subject to the FFS Financial Services Agreement.

LESSOR: DEALER NAME ______ DATE ______

X [signature] AUTHORIZED SIGNATURE — FERRARI SAN DIEGO PRINT NAME

## INSURANCE, TAXES, FEES, TITLE, REGISTRATION

17. ***REQUIRED INSURANCE COVERAGE.*** *I must insure the Vehicle until it is returned to you. The insurance must be primary, acceptable to you and protect me and you with: (a) minimum bodily injury liability of $250,000 per person/$500,000 per occurrence, (b) minimum property damage liability of $100,000 per occurrence or $500,000 combined property damage liability and bodily injury liability and (c) collision and comprehensive damage insurance for not less than the Vehicle's actual value with a maximum deductible of $1,000 per claim. The policy must name me as an insured with you as an additional insured for liability and you as the only loss payee. The policy must provide both you and me with 30 days' prior written notice (or any lesser minimum notice period provided by law) of any change to or termination of coverage. I agree to promptly provide you with a copy of the current policy or related certificate of insurance.*

*If I do not buy this insurance, you may, but do not have to, buy the insurance. You may insure only yourself or both of us. In either case, I must pay back to you what you paid for the insurance. If you insure only yourself, I will not have insurance.*

***PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.***

18. **TAXES AND FEES.** I will promptly pay or reimburse you for all fees, charges, fines and taxes relating to the Lease or Vehicle (except for your net income taxes). I will pay any of these amounts which are assessed during the Lease Term even if they are not due until after the Lease ends and even if I've paid my termination liability or purchased the Vehicle. Each time you pay any fine, ticket, or penalty on my behalf or identify the license plate number for my Vehicle, I will reimburse you for your out-of-pocket costs and pay a $50 administration fee.

19. **TITLE, REGISTRATION, INSPECTION.** I am responsible for ensuring the Vehicle is titled in your name and is properly titled, registered and licensed in the state where garaged, or at your direction. If I receive the title for any reason, I agree to send it to you or be responsible for the cost of obtaining a duplicate. I will advise you of the license plate number of the Vehicle. I am responsible for any required inspections. If I move or change the Vehicle's garaging address, I will notify you immediately and pay all resulting taxes and title, registration, or other fees and pay a $100 administration fee. I will not move the Vehicle's garaging address outside the United States.

## USE, CARE AND RETURN OF VEHICLE

20. **USAGE.** I agree not to use or permit the use of the Vehicle: (a) outside the United States; (b) for any unlawful purpose; (c) for hire, rental, livery, law enforcement, emergency or rescue; (d) by an unlicensed driver or anyone whom I have reason to know may operate the Vehicle unlawfully, recklessly, or negligently; (e) for track use or racing or (f) by anyone excluded in my insurance policy from driving the Vehicle. I agree that I will remain the primary driver of the Vehicle unless you consent in writing to another person being the primary driver. I will not allow the Vehicle to be driven by anyone under 25 years old.

21. **MAINTENANCE AND REPAIRS.** I must maintain and service the Vehicle according to the manufacturer's recommendations at an authorized Ferrari dealer. I am responsible for everything that is needed to keep the Vehicle running properly such as gasoline, oil, antifreeze and tune-ups. I must make all needed repairs and must use genuine manufacturer's replacement parts.

22. **MAINTENANCE RECORDS.** I will provide proof of maintenance and repairs to you upon request. If the Vehicle is returned to you, I will return the Vehicle's properly endorsed maintenance booklet, signed by each dealer performing the scheduled maintenance, and any other manufacturer-provided documents. If the Vehicle is a Ferrari and I fail to return the booklet with proper endorsements, I acknowledge that the Vehicle's value will be substantially impaired which may increase my end of lease liability substantially.

23. **EXCESS WEAR AND USE.** I have agreed that my end of Lease liability (as determined under Sections 24 to 33) is based, at least in part, on the Realized Value of the Vehicle. I acknowledge that any excess wear and use or mileage may cause the Realized Value of the vehicle to decline and increase my end of Lease liability. In addition, if the difference between the actual value of the vehicle and Residual Value exceeds three times the Monthly Payment, or in the case of a Single Payment lease, three times the Single Payment divided by the number of months in the Lease Term, I agree that I am responsible for excess mileage and excess wear and use. My responsibility for excess wear and use includes, among other things, (a) glass damage, (b) mismatched tires or tires not comparable to the originals or tires with wear resulting in less than 1/8" of tread remaining at the shallowest point, (c) failure to complete all required servicing, (d) dents or deformities to the exterior of the Vehicle, (e) paint damage, (f) holes, stains, tears, cracks, excess wear marks or burns in the interior, (g) missing parts, tools or accessories, (h) damage from the elements, (i) frame damage, (j) mechanical problems and any damage or condition that causes the Vehicle to operate in a noisy, rough, improper or unsafe manner or voids the Vehicle's warranty, and (k) all damage which would be covered by collision or comprehensive insurance whether or not such insurance is in effect. I also agree that if the Vehicle's odometer is non-operating or has been tampered with, the value of the Vehicle will be substantially less than the value of an identical vehicle which has an operating odometer which has not been tampered with. I agree that my obligations at Lease end include this difference. I acknowledge that if the Vehicle is a Ferrari, the Vehicle is an extraordinary machine which must be maintained in showroom condition. Wear and use that may be considered ordinary when incurred on other vehicles may be considered excess wear and use on a Ferrari. I acknowledge that any physical imperfection could cause the Realized Value of a Ferrari to decline and increase my end of Lease liability.

## ENDING YOUR LEASE

24. **EARLY TERMINATION CONDITIONS.** I may terminate the Lease early by: (a) purchasing the Vehicle (see Section 31); or, (b) if at least 12 months of my Lease Term have expired, by surrendering the Vehicle to a location selected by you, and I will owe you the Early Termination Liability described below. You may terminate the Lease at any time before Lease end if I am in default, and I will owe you the Early Termination Liability described below. You may also terminate the Lease before Lease end as set forth in Section 29.

25. **EARLY TERMINATION LIABILITY.**

A. **Monthly or Single Payment Liability.** My Early Termination Liability will equal the sum of: (1) all amounts due and unpaid under the Lease, plus (2) the amount by which the Adjusted Lease Balance (Section 26 or 27) plus your actual out-of-pocket sale and repair costs exceeds the Realized Value.
If I have a Monthly Payment Lease and the Realized Value exceeds the Adjusted Lease Balance, you will be entitled to the surplus.

B. **Single Payment Lease Credit.** If I have a Single Payment Lease, and the Realized Value exceeds the Adjusted Lease Balance (Section 27) I will be entitled to a credit equal to the lesser of:
(i) the excess; or
(ii) the product of the Single Payment divided by the number of months shown in the Lease Term times the number of whole months remaining until Lease end.
This credit will be compared to the amounts I owe you under the Lease. Any excess will be refunded to me or I will owe you any deficiency.

26. **MONTHLY PAYMENT LEASE ADJUSTED LEASE BALANCE CALCULATION.** (This is an actuarial calculation known as the Constant Yield Method.) If I have a Monthly Payment Lease, the Adjusted Lease Balance at any given time is the Adjusted Capitalized Cost less the depreciation portion of all Base Monthly Payments due up to that time. The depreciation portions of each Base Monthly Payment are figured by applying a constant rate to a declining earning balance. The constant rate is that rate which causes the Adjusted Capitalized Cost to be reduced to the Residual Value over the Lease Term after crediting the depreciation portions of all the Base Monthly Payments when due. The earning balance at any given time is: (a) the Adjusted Capitalized Cost less (b) one Base Monthly Payment and (c) the depreciation portions of the previously due Base Monthly Payments. I can calculate the Adjusted Lease Balance for any month with a financial calculator programmed to make actuarial balance calculations by using the Adjusted Capitalized Cost, the Residual Value, the Lease Term and the Base Monthly Payment and following the directions for finding the outstanding balance.

27. **SINGLE PAYMENT LEASE ADJUSTED LEASE BALANCE CALCULATION.** (This is an actuarial calculation.) If I have a Single Payment Lease the Adjusted Lease Balance at any given time is determined by adding to the Initial Balance Subject to Lease Charge described below all Rent Charges accrued as of the month of the calculation. The Rent Charges accrue at a constant rate which, when Rent Charges are compounded monthly, causes the Initial Balance Subject to Lease Charge to increase to the Residual Value over the term. The Initial Balance Subject to Lease Charge is equal to the Adjusted Capitalized Cost less the Single Payment, excluding taxes.

28. **REALIZED VALUE.** The Realized Value may be determined in one of the following ways: (a) You and I may agree in writing; (b) I may obtain, at my own expense, from an independent third party agreeable to you and me, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value; or (c) If the Realized Value is not determined in either of the above ways within 10 days after return or repossession of the Vehicle, you may determine the Realized Value in any of the following ways: (1) The price received by you for the Vehicle at disposition; (2) The highest offer for disposition of the Vehicle; or (3) The wholesale fair market value of the Vehicle at Lease end, which you shall determine by any commercially reasonable means.

29. **LOSS OR DAMAGE TO THE VEHICLE.**

A. **Lessee's Obligations.** If the Vehicle is damaged, lost, stolen or confiscated, I will tell you immediately. If the Vehicle is damaged but repairable, I will promptly have the repairs made.

**If the Vehicle is lost, stolen, confiscated or damaged beyond repair, the Lease will terminate early and lessee will be liable for an amount equal to the sum of (1) all amounts due and unpaid under the Lease, plus (2) the amount by which the Adjusted Lease Balance exceeds the proceeds of the insurance on the Vehicle ("GAP Amount").** I understand that I may be able to purchase a product to cover any such GAP Amount (this is known as a "GAP Product"), but it is my responsibility to do so if I desire.

B. **Credits to Lessee.** If I have a Single Payment Lease, and any insurance proceeds you receive exceed the Adjusted Lease Balance (Section 27), I will be entitled to a credit equal to the lesser of:
(i) the excess; or
(ii) the product of the Single Payment divided by the number of months shown in the Lease Term times the number of whole months remaining until Lease end. This credit will be compared to the amounts I owe you under the Lease. Any excess will be refunded to me or I will owe you any deficiency.

30. **END OF TERM LIABILITY.** If I do not purchase the Vehicle at the end of the Lease Term, I agree to return the Vehicle to a reasonable location selected by you and pay you: (a) the Termination Fee; (b) all amounts due and unpaid under the Lease; (c) the amount by which the Residual Value plus your actual out-of-pocket sale and repairs costs exceeds the Realized Value. If the Realized Value exceeds the Residual Value, you will be entitled to the surplus. If I do not return the Vehicle at Lease end I am in default and, in addition to the remedies set forth in Section 33, I agree to pay the Base Monthly Payment, or in a Single Payment Lease, the Single Payment divided by the number of months shown in the Lease Term, plus any applicable taxes, for each month or fraction thereof until the Vehicle is returned.

A. The Vehicle's Residual Value is based on reasonable, good faith estimate of the value of the Vehicle at the end of the Lease Term. If the actual value of the Vehicle at that time is greater than the Residual Value, I will have no further liability under this Lease, except for other charges already incurred. If the actual Value of the Vehicle is less than the Residual Value, I will be liable for any difference up to an amount equal to 3 times the Monthly Payment, or in the case of a Single Payment lease, three times the Single Payment divided by the number of months in the Lease Term.
For any difference in excess of that amount, I will be liable only if:
(1) The excess wear and use or mileage (Section 23) resulted in an unusually low value at the end of the Lease Term;
(2) The matter is not otherwise resolved and you win a lawsuit against me seeking a higher payment.
(3) I voluntarily agree with you after the end of the Lease Term to make a higher payment.

Should you bring a lawsuit against me, you must prove that your original estimate of the value of the Vehicle at the end of the Lease Term was reasonable and was made in good faith. For example, you might prove that the actual value was less than the original estimated value, although the original estimate was reasonable because of an unanticipated decline for that type of vehicle. You must also pay my attorneys' fees.

B. If I disagree with the value you assign to the Vehicle, I may obtain, at my own expense, from an independent third party agreeable to both of us, a professional appraisal of the wholesale value of the leased Vehicle which could be realized at sale. The appraisal value shall then be used as the actual value. If the Realized Value exceeds the Residual Value, you will be entitled to the surplus.

31. **PURCHASE OPTION.** I can buy the Vehicle from you or your designated intermediary, "AS IS, WHERE IS." If I want to buy the Vehicle, I will tell you at least 30 days in advance and will complete any documents you require for the purchase. At Lease end, the purchase price will be the Residual Value. Before Lease end, the purchase price will be the Adjusted Lease Balance. In either case, I will also pay any other amounts due or outstanding under the Lease at the time of purchase, and the Purchase Option Fee. Whether I purchase the Vehicle during the Lease Term or upon Lease end, I agree to promptly retitle and re-register the Vehicle and provide a license plate return receipt if applicable.

32. **DEFAULT.** I will be in default of the Lease if: (a) I do not make a payment when due; (b) I do not keep the required insurance in force; (c) I breach any other Lease term or condition; (d) I am the subject of a bankruptcy, receivership or insolvency proceeding or make an assignment for the benefit of creditors; (e) any Lease application information is false or misleading; (f) I die; (g) the Vehicle is seized, encumbered, converted, abandoned, pledged, or sold; (h) I do not purchase the Vehicle and fail to return the Vehicle at Lease end; or (i) I am a business Lessee and dissolve.

33. **REMEDIES.** If I default, you can: (a) take any reasonable measure designed to either correct the default or save yourself from loss, and I will pay you on demand for the costs and expenses you incur; (b) terminate this Lease and my right to possess and use the Vehicle; (c) take possession of the Vehicle; (d) demand payment of my Early Termination Liability as set forth in Section 25; (e) apply any security deposit to any amount I owe you; (f) require me to deliver the Vehicle to a reasonable location selected by you; and/or (g) pursue any other remedy permitted by law.

If the Vehicle is repossessed and property is found in it, I must claim the property at my expense and pay any storage fees within 15 days or you may dispose of the property without liability to me.

If I default I will pay any repossession and storage expenses plus reasonable attorneys' fees and court costs you incur, subject to any limitation or prohibitions under state law, and interest on the amount I owe calculated at 18% per year or such lesser default rate as required by law.

## OTHER TERMS

34. **SECURITY DEPOSIT.** My security deposit may be applied by you to pay all amounts that I fail to pay under this Lease. I will not earn interest or receive any profit or increase on my security deposit. You will refund to me any unapplied security deposit after I pay all my Lease obligations.

35. **LATE CHARGES; PAYMENTS.** If my payments are due on the 29th, 30th, or 31st of the month, they will be due on the last day of the month in the case of February. If I do not make the full amount of a payment required under the Lease within 10 days of its due date, I will pay you a late charge of $50, or such lesser amount as may be required by law. If payment is made by check or debit which is subsequently returned unpaid, you may bill me a service charge of $15. If you deposit a check marked "payment in full" or words of similar effect, you do not waive your right to have the full amount paid.

36. **INDEMNIFICATION.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits (including suits alleging strict liability), losses, damages and expenses (including attorneys' fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle.

37. **ASSIGNMENT.** You may assign, sell or encumber this Lease and the Vehicle in whole or in part. I MAY NOT TRANSFER OR SUBLEASE THE VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT. Subject to any limitations or prohibitions under state law, I agree that I will not assert against any Assignee of this Lease, any claims or defenses I have against a prior Lessor.

38. **GENERAL. Consent.** I consent to your release of information relating to this Lease, including my performance under it, to public officials, credit bureaus, dealers and to other persons who may reasonably request such information. **Odometer Statement.** Federal law requires that I complete a statement of the Vehicle's mileage at the end of the Lease Term. Failure to complete an odometer statement or return it to the Lessor or making a false statement therein may result in fines and imprisonment. I will be provided an odometer statement to complete prior to the end of the Lease Term. **Waiver; Joint Liability.** Your failure to insist upon my complying with my obligations shall not be construed as waiving any such obligations and shall not preclude you from exercising your rights and remedies as to those same obligations in the future. If more than one Lessee signs this Lease, all Lessees will be jointly and severally liable. You may enforce your rights as to one Lessee and not another without affecting your rights as to the other. You can also release a Lessee or guarantor without releasing any other Lessee or guarantor. **Severability.** If any provision of this Lease is held by a court to be invalid or unenforceable, such provision shall be deemed to be deleted or modified to comply and all remaining provisions will remain in force. **Replacement Vehicles.** You will not be required to provide a replacement vehicle to me if the Vehicle is damaged, stolen or being repaired. **Relationship.** The original Lessor is not an agent of any Assignee and the Assignee is not liable for any promise the original Lessor makes which is not in the Lease. **Governing Law.** This Lease shall be governed by the laws of the state in which the Lessor is located. **Class Action Waiver. I hereby waive any rights I have to initiate or participate in a class action related to this contract.**

39. **ARBITRATION***

**BINDING ARBITRATION.** *For this Section 39, "you" means the Lessee(s).

PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH BINDING ARBITRATION INSTEAD OF JUDICIAL PROCEEDINGS IN A COURT OF COMPETENT JURISDICTION AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT.

Any disputes or claims, including those against any of our subsidiary, parent or affiliate companies and our successors and assigns, arising out of or relating to or from the relationships that likely result from this Lease including issues of interpretation, scope, validity, construction of this arbitration provision and arbitrability of any dispute or claim (whether based in contract, tort, statute, fraud, equitable relief, misrepresentation or any other legal theory including state and federal statutory claims) at the option of either you or us will be resolved exclusively by neutral binding arbitration. IN ARBITRATION, YOU AND WE GIVE UP THE RIGHT TO A TRIAL BY A COURT OR A JURY. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit. Other rights that you and/or we would have in court may not be available in arbitration.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Binding arbitration shall be conducted and administered by the American Arbitration Association ("AAA") and shall proceed under the applicable rules of the AAA, which can be obtained at Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or on the internet at http://www.adr.org/. The arbiter shall be an attorney or retired judge and shall be selected in accordance with the applicable AAA rules. The arbiter shall apply the governing law of the jurisdiction where you reside consistent with the FAA and shall honor any claims of privilege recognized at law. Unless the AAA's rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. The arbiter shall not have the power to award punitive or treble damages against you or us.

**YOU AND WE AGREE THAT ALL FORMS OF CLASS ACTION OR CLASS ARBITRATION ARE EXPRESSLY PROHIBITED.**

For claims less than $1,000, you will be obligated to pay $50 in arbitration fees and we will pay all other arbitration costs and fees. For claims over $1,000 but under $50,000, you will be obligated to pay your share of the arbitration fees, but no more than the equivalent court filing fee for a state court action filed in the jurisdiction where you reside. For arbitrations in excess of $50,000, all administrative fees and expenses of arbitration will be divided equally between you and us and we will front the arbitration fees if you are unable to pay your share due to your financial condition. The fees will be equitably divided by the arbiter in his or her final decision. In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration unless otherwise mandated by state or federal law. Nothing in this arbitration clause shall prevent you from requesting that AAA reduce or waive any of your fees or that we voluntarily pay an additional share of the fees based upon your financial condition or nature of your claim.

Notwithstanding this clause, both you and we and our successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbiter. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

Any arbitration with respect to any disputes or claims must be brought within two years after the cause of action arises, or within the applicable statute of limitations, whichever is shorter. This limitations period does not apply to any given cause of action when the statutory limitations period for that cause of action cannot be waived, restricted, or otherwise limited by you. If any part of this arbitration clause is deemed to be invalid or otherwise unenforceable or illegal, the balance of this arbitration clause shall remain in effect and shall be construed in accordance with its terms as if the invalid or illegal provision were not contained herein.