HONORABLE THOMAS S. ZILLY
NOTING DATE: AUGUST 26, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| FERRARI FINANCIAL SERVICES, INC.,<br>Plaintiff,<br>v.<br>BRENT BIGGS,<br>Defendant. | NO. 3:19-CV-05873-TSZ<br>DEFENDANT BRENT BIGGS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

COMES NOW, Defendant Brent Biggs, by and through his counsel Binah B. Yeung and Nicole R. Springstroh of Cairncross & Hempelmann, P.S., and submits this response (the "**Response**") in opposition to Plaintiff Ferrari Financial Services, Inc.'s ("**FFS**") Motion for Summary Judgment on Plaintiff's Claims and Defendant's Counterclaims (the "**Motion**") (ECF 45). This Response is supported by the pleadings and records filed in this action, as well as the Declarations of Brent Biggs (the "**Biggs Decl.**"), Nicole R. Springstroh (the "**Springstroh Decl.**"), and Darion Kalegi (the "**Kalegi Decl.**") submitted herewith.

## I. INTRODUCTION

FFS's description of the facts of this case as "straightforward and undisputed" could not be farther from the truth. There is nothing straightforward about this case and the parties dispute nearly every fact—material or otherwise. In fact, the only undisputed fact in this case is that Mr.



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

Biggs never received the Notice of Rights and Disposition, which would have apprised him of his ability to purchase the Vehicle or at least obtain an appraisal on its value. *See,* Mink Decl., ¶ 24, Ex. 8.

The remaining facts are in dispute, and evidence FFS's failure to comply with the Lease and California's Vehicle Leasing Act, and that it is not entitled to the $106,000 plus fees that it seeks judgment for. To this date, FFS has failed to provide any documentation evidencing the voluntary surrender of the vehicle. Nor has it provided any documentation or explanation for how and on what basis the Vehicle was transported from New Orleans to Texas, where it was ultimately sold for half its fair market value in a sale made before the statutorily permitted date. What is currently available of FFS's thin account records indicate that it wholly failed to pursue or effectuate a reasonable commercial sale of the Vehicle. And, FFS's deficiency lawsuit is the product of its own failure to follow applicable procedures or to effectuate a commercially reasonable sale. These facts raise serious concerns about FFS's business practices and treatment of other consumers like Mr. Biggs. Accordingly, and as explained in further detail below, its request for summary judgment should be denied.

## II. FACTUAL SUMMARY

### A. <u>Mr. Biggs did not voluntarily surrender the Vehicle or breach the Lease.</u>

Defendant Biggs disputes that he ever voluntarily surrendered the Vehicle or breached the Lease. As previously testified, he arranged for the vehicle to be brought to a Ferrari dealership in Louisiana so that it could be shipped back to California where he was residing. Biggs Decl., ¶ 11. Instead, FFS repossessed the vehicle and terminated his Lease, without maintainng any record of its or providing any documentation of its right or ability to do so. Because of FFS's faulty noticing, Mr. Biggs did not learn of any of events described until he received a notice of sale for his family's vacation home several years later. Since then, he has retained counsel and participated in this action.

### B. <u>FFS issued faulty notices under the Lease which deprived Mr. Biggs of due process</u>



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

In its Complaint (ECF 1, "**Complaint**"), FFS alleges that on or about August 13, 2015, Mr. Biggs executed a Motor Vehicle Lease Agreement (Open-End) (the "**Lease**") with Ferrari & Maserati of San Diego for a 2015 Ferrari California (the "**Vehicle**").[1] *Id.* At ¶ 3. According to the Lease, Ferrari & Maserati of San Diego assigned its interest in the Lease and Vehicle to FFS. *Id.* The Lease lists Mr. Biggs' billing address as 36 Admiralty Cross, Coronado, California (the "**Coronado Residence**"). *Id.* At ¶ 4.

Mr. Biggs disputes that he ever defaulted under the Lease. Biggs Decl., ¶ 8, 11. Yet, on or about September 26, 2017, FFS apparently attempted to send Mr. Biggs a Notice of Default, Right to Cure, and Intent to Repossess (the "**Notice of Default**"). Complaint at ¶ 5. FFS sent the Notice of Default to Mr. Biggs at 870 E. Mason Lake Drive S., Grapeview, <u>California</u>, a place that does not actually exist. *Id.* at ¶ 6.

On or about February 13, 2018, FFS attempted to send Mr. Biggs a Notice of Rights of Defaulting Parties and of Disposition of Vehicle Following Lessee's Early Termination of Lease Contract (the "**Notice of Rights and Disposition**") and alleged Mr. Biggs terminated the Lease by voluntarily surrendering the Vehicle. *Id.* at ¶ 7. This time, FFS sent the Notice of Rights and Disposition to Mr. Biggs at 870 E. Mason Lake Drive S., Grape<u>vine</u>, Washington, another non-existent address. *Id.* at ¶ 8.

The Notice of Rights and Disposition stated that if Mr. Biggs chose to purchase the Vehicle prior to its sale, he was required to pay FFS the Gross Early Termination Amount which totaled $207,859.63. *Id.* at ¶ 9. This amount is allegedly made up of unpaid lease payments totaling $8,460.14, other amounts due and unpaid totaling $300.00, termination charges totaling $995.00,

---

[1] FFS has continually failed to provide this Court and Mr. Biggs with a fully legible copy of the agreement. *See, e.g.*, Declaration of Patrick Granger (the "**Granger Decl.**") (ECF 46), ¶¶ 5, 7–12, Ex. 1 (ECF 46-1). Without a discernable copy, it is impossible to understand how the Court is expected to enforce the Lease according to its plain meaning. It is well-settled that conclusory, non-specific statements in affidavits are not sufficient for summary judgment, and missing facts will not be presumed. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). FFS's own Motion contends that "[e]vidence must be concrete." Motion, at 8. Until FFS produces a legible copy of the Lease, it should not be enforced.



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

and the Adjusted Capitalized Cost of the Vehicle totaling $200,929.46, less the security deposit ($2,825.00). *Id.* The Gross Early Termination Amount also included fees incurred by FFS; however, the Notice of Rights and Disposition contended that no such fees were incurred. *Id.* It is undisputed that Mr. Biggs never received the Notice of Rights and Disposition, and therefore had no ability to exercise his rights under this notice. *See,* Mink Decl., ¶ 24, Ex. 8, Biggs Decl., ¶ 12.

Most importantly, however, the Notice of Rights and Disposition stated that pursuant to California Civil Code Sec. 2987(d)(2), that Mr. Biggs had 21 days following the notice, or until March 6, 2018, to purchase the Vehicle, indicating that FFS would not sell the vehicle before that time.

### C. FFS prematurely sold the Vehicle for a depressed price to a private buyer *before* the statutorily permitted time for sale.

Records for the Vehicle indicate that despite the date stated in the Notice of Rights and Disposition, FFS sold the vehicle on February 26, 2018, nearly two weeks before the first authorized date of sale. *See,* Biggs Decl., Ex. A. FFS glosses over this fact in its Motion, stating in a footnote that "The Vehicle was contracted for sale by FFS' agent, Manheim, to a prospective buyer, on February 26, 2018, but the sale was not consummated, no payment was made by the prospective buyer, and title to the Vehicle did not transfer." Motion, at 6, footnote 4. However, FFS's Motion is at odds with the CARFAX report, indicating that the vehicle was in fact sold on February 26, 2018, creating at best a material issue of fact, and at worst, prima facie evidence that FFS intentionally violated California's Vehicle Leasing Act.

Records recently disclosed by FFS also indicate that, consistent with Mr. Biggs' testimony and memory, the Vehicle was in excellent condition and should have been marketed and sold as such. *See,* Biggs Decl., ¶ 17. Instead, FFS sold the Vehicle for only a fraction of its fair market value. *Id.* Kelley Blue Book ("**KBB**") and the National Automobile Dealers Association ("**NADA**") both report that the Vehicle has a current retail value of nearly double that price, in the range of $136,000 to $179,000. *See* Kalegi Decl., ¶¶ 7–9, Ex. A, Ex. B. Even *wholesale* auction



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

vehicle transactions over the last ten (10) months, from Manheim Auto Auction, demonstrate that recent wholesale transactions for this vehicle have ranged from $108,500.00 to $148,000.00. *See id.* at ¶ 10, Ex. C. These reports are consistent with a car of this nature and age and indicate that the Vehicle was not sold in a commercially reasonable manner. *Id.* at ¶¶ 11–12.

On or about June 7, 2018, after disposing of the Vehicle at a grossly depressed price, FFS sent Mr. Biggs a Deficiency/Surplus Explanation (the "**Deficiency Explanation**"). *Id.* at ¶ 10. FFS finally sent the Deficiency Explanation to Mr. Biggs' family vacation home located at 870 E. Mason Lake Drive S., Grapeview, Washington (the "**Grapeview Residence**"), indicating that FFS was aware all along of the correct address for this property. *Id.* The Deficiency Explanation alleged that, following the sale of the Vehicle, Mr. Biggs' FFS account reflected a deficiency balance for which Mr. Biggs is liable. *Id.* at ¶ 11. The deficiency totaled $106,317.94 which was allegedly calculated based on the aggregate unpaid balance of lease obligations totaling $193,433.94, costs of retaking and storing the Vehicle totaling $914.00, less the proceeds from the sale of the Vehicle ($85,205.00) and the security deposit ($2,825.00). *Id.* Mr. Biggs never received the Deficiency Explanation (Biggs Decl., ¶ 13) or any subsequent communications from FFS regarding the deficiency; and no return receipt showing delivery or copy of the envelope used has been produced by FFS.

**D. <u>FFS obtains a default judgment through knowingly deficient service of its Complaint, which was subsequently vacated.</u>**

Thereafter, on September 17, 2019, FFS filed its Complaint (ECF 1). On the summons, FFS listed Mr. Biggs' address for the first time as 3611 N. Union Avenue, Tacoma, Washington (the "**Tacoma Residence**"). Springstroh Decl., ¶ 13.

On December 12, 2019, FFS filed a Motion for Service by Publication and to Enlarge Time for Service. *Id.* at ¶ 14. The Affidavit of Tanya N. Lewis, submitted in support of the Motion for Service by Publication, explained that process servers attempted personal service on Mr. Biggs at the Tacoma Residence, the Grapeview Residence, an address in Puyallup, Washington, and an



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

address in Los Angeles, California. *Id.* This was not withstanding the fact that FFS had explicit confirmation, from several sources, that Mr. Biggs did not reside at the Tacoma Residence, the Los Angeles Residence, or the Grapeview Residence. *Id.* at ¶ 14–15. Still, Ms. Lewis caused copies of the Verified Complaint and Summons to be mailed to every address set forth above. *Id.*

Upon receipt of a signed Order granting the Motion for Service by Publication (ECF 9), and despite confirmation from several sources that Mr. Biggs did not reside in either Los Angeles County or Pierce County, FFS published notice of the Summons in the Los Angeles Daily Journal and the Tacoma Daily Index. *Id.* at ¶ 16. On April 30, 2020, based on FFS's assertions, default was entered against Mr. Biggs. *Id.* at ¶ 17.

On June 3, 2020, FFS filed a Motion for Entry of Default Judgment Against Defendant Brent Biggs and reiterated that it had "duly served the Complaint and Summons via publication after multiple efforts to locate [Mr. Biggs] for personal service were unsuccessful." *Id.* at ¶ 18. On July 14, 2020, the Court entered a default judgment against Mr. Biggs. *Id.* at ¶ 19.

On December 4, 2020, the Court entered an amended judgment awarding FFS general damages of $106,317.94, together with $5,000.00 in attorneys' fees, $400.00 in costs, and interest pursuant to 28 U.S.C. § 1961 at the rate of eleven hundredths of one percent (0.11%) per annum from the date of the Judgment until paid in full. *Id.* at ¶ 20. Notably the Court awarded only $5,000.00 of the $28,204.50 in fees sought by FFS for a "simple, literally unopposed case." *Id.*

On May 27, 2021, FFS filed an Application for Writ of Garnishment under Case No. 3:21-mc-05017-BHS in the Western District of Washington. *Id.* at ¶ 21. On November 12, 2021, almost a year after entry of the default judgment, FFS filed a Petition for Filing of Foreign Judgment seeking to file the Amended Judgment as a foreign judgment in the Superior Court of Mason County under Case No. 21-1-00557-23. *Id.* at ¶ 22. On December 22, 2021, FFS filed a Writ of Execution and Order of Sale and Praecipe for Writ of Execution. *Id.*

On February 16, 2022, Mr. Biggs filed a Motion to Vacate Default and Default Judgment for Lack of Notice (the "**Motion to Vacate**"). *Id.* at ¶ 23. Biggs sought to vacate the entry of



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

default and default judgment due to FFS's failure to effectively serve him and provide notice of the Summons and Complaint. *Id.* FFS filed its opposition (the "**Opposition**") to the Motion to Vacate on February 28, 2022. *Id.* at ¶ 24.

In the meantime, counsel for Mr. Biggs requested that FFS stay or continue its Mason County Sheriff's Execution Sale while his Motion to Vacate was pending. FFS refused, forcing Mr. Biggs to incur wholly avoidable fees and costs in seeking a preliminary injunction staying the sale. On March 15, 2022, the Mason County Superior Court, Honorable Judge Daniel Goodell presiding, entered an Order Granting Defendant's Motion for Preliminary Injunction Staying Sheriff's Execution Sale set for March 18, 2022. On April 6, 2022, this Court entered an order granting Mr. Biggs' Motion to Vacate. *Id.* at ¶ 29.

FFS filed its Motion for Summary Judgment on Plaintiff's Claims and Defendant's Counterclaims on July 29, 2022. FFS complains that this case has been pending since 2019 when in reality, it has effectively been pending for only three months. Any delay is solely the fault of FFS and its failure to properly serve Mr. Biggs, and should not be held against him. *Id.* at ¶ 30.

**E. <u>Mr. Biggs files his Answer and Counterclaims</u>**

On May 2, 2022, following entry of the order vacating FFS's default and default judgment, Biggs filed his Answer and Counterclaims (ECF 41). In addition to denying that FFS is entitled to any relief, Mr. Biggs seeks recovery against FFS for breach of contract, violation of the California Vehicle Leasing Act, violation of the California Business and Professions Code, and violations of Washington's Consumer Protection Act.

Mr. Biggs claims stem from the fact that FFS repeated failed to provide proper notices under the Lease or to send such notices to the correct address, that FFS repossessed his vehicle with no basis for doing so, while claiming that it was voluntarily surrendered, that FFS sold the vehicle to a private buyer before the statutorily permitted date for doing so, and that FFS failed to sell the vehicle in a commercial reasonable manner, as evidenced by the fact that it sold for nearly half its retail value as confirmed by multiple sources. *See generally,* Biggs Decl., Kalegi Decl.,



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

Springstroh Decl. Moreover, FFS acts occurred in trade or commerce and certainly had the ability to impact other consumers such as Biggs.

Pursuant to the Court's Order (ECF 40), the parties were to exchange initial disclosures by June 7, 2022. On June 14, 2022, FFS provided its initial disclosures consisting of another illegible copy of the Lease, an account ledger, and a selection of account notices. No information concerning the vehicle or its disposition was included. On July 29, 2022, nearly two months after the initial disclosure deadline, FFS produced an additional 13 pages of documents, consisting of the vehicle condition and sale information referenced above.

Every new pleading and submission filed by FFS in this case has revealed new, previously undisclosed information. Due to the trickle of documents from FFS provided in the course of lay-down discovery, Mr. Biggs issued discovery requests to Plaintiff on August 16, 2022, and subpoenas to each of the dealerships, the auction houses, and buyer who interacted with FFS and the Vehicle. Responses to this discovery have not yet been received as of this filing. This discovery, along with depositions of FFS's key employees, are critical to figuring out why FFS repeatedly failed to provide proper notices under the Lease or to send such notices to the correct address, why FFS repossessed the Vehicle with no basis for doing so, why FFS sold the vehicle to a private buyer before the statutorily permitted date for doing so, and why FFS sold the vehicle nearly half its retail value back in 2018.

## III. LEGAL AUTHORITY AND ARGUMENT

### 1. Summary Judgment Standard—All evidence must be viewed in the light most favorable to Mr. Biggs, the non-moving party.

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c)(1); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Material facts are those which



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

may affect the outcome of the case." *Collazo v. Balboa Ins. Co.*, No. C13-0892-JCC, 2014 WL 7240523, at *1 (W.D. Wash. Dec. 19, 2014) (citing *Anderson*, 477 U.S. at 248–49).

It is the moving party which bears the burden of establishing that it is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether to grant summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party." *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1340 (W.D. Wash. 1994) (citing *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir. 1989)). All justifiable inferences must be drawn in the nonmovant's favor, *see Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011), and the Court must refrain from making credibility determinations or weighing the evidence. *See Anderson*, 477 U.S. at 250–51. "*[O]nly after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact" does the nonmoving party bear the burden of responding. *Celotex Corp.*, 447 U.S. at 322 (emphasis in original).

In addition to the movant's initial summary judgment burden, it must also show that "no reasonable jury could find" for the non-movant "on all the essential elements of its case on which [the movant] bears the burden of proof at trial." *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir.1991) (citations omitted). As discussed below, FFS bears the burden of proving the absence of any genuine issues of material fact on its Breach of Contract claim, which it has failed to do.

**2. Issues of Material Fact exist as to FFS's right to any deficiency, including whether Mr. Biggs voluntarily surrendered the Vehicle, whether FFS properly repossessed it, whether FFS provided proper notices under the Lease and California's Vehicle Leasing Act (CVLA), whether FFS sold the Vehicle in compliance with the CVLA, and whether FFS sold the Vehicle in a commercially reasonable manner.**

As discussed in detail above, issues of material fact exist as to whether Mr. Biggs voluntarily surrendered the Vehicle, whether FFS properly repossessed it, whether FFS provided proper notices under the Lease and California's Vehicle Leasing Act (CVLA), whether FFS sold the Vehicle in compliance with the CVLA, and whether FFS sold the Vehicle in a commercially



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

reasonable manner. Nearly every fact in this case is disputed. The only undisputed fact is that Mr. Biggs never received the Notice of Rights and Disposition. *See,* Mink Decl., ¶ 24, Ex. 8.

These facts are material because they are determinative of whether FFS had the right repossess and sell the vehicle in the manner that it did. In order to prevail on summary judgment, FFS must make a prima facie showing of the elements of its claim, and demonstrate that no reasonable jury could find for Mr. Biggs. FFS has failed to provide any evidence that the vehicle was voluntarily surrendered or that it properly repossessed it, to contradict Mr. Biggs statement under oath that he did not voluntarily surrender the vehicle. Under these circumstances, FFS has failed to show that that no reasonable jury could find for Mr. Biggs.

FFS makes much hay of its claim that Mr. Biggs breached the lease in ways it never previously asserted or identified (such as by failing to report the vehicle as stolen). *See also,* Biggs Decl. ¶ (Mr. Biggs was told by the police that the vehicle did not qualify as stolen because it was taken by an acquaintance who obtained the keys). However, these alleged breaches are (1) disputed, and (2) not material to the point that they wholly alleviate FFS from its obligations to comply with the Lease or the CVLA.

**3. Issues of material fact exist as to the amount of FFS's claimed deficiency.**

FFS's own factual record is inconsistent and raises further issues of material fact with respect to its alleged damages. *See* Springstroh Decl., ¶¶ 7, 9–11, 28, 35.

For example, on the Notice of Rights and Disposition, FFS alleges that the unpaid lease payments total $8,460.14, other amounts due and unpaid total $300.00, and the Adjusted Capitalized Cost of the Vehicle less the security deposit totals $198,104.49 (a grand total of $206,864.63). *See* Notice of Rights and Disposition, ¶¶ 1–2, 5 (ECF 1-3). However, on the Deficiency Explanation, the alleged aggregate unpaid balance amounts to $193,433.94—far less than the grand total listed above *and* this balance precedes FFS crediting the security deposit to Mr. Biggs' account. *See* Deficiency Explanation, ¶¶ 1, 10 (ECF 1-4).



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

Similarly, the Notice of Rights and Disposition lists that FFS incurred *no* reasonable fees—$0.00—which include repossession and storage, reconditioning of the Vehicle, and other costs of sale. *See* Notice of Rights and Disposition, ¶ 4 (ECF 1-3). Conversely, the Deficiency Explanation charges Mr. Biggs $914.00 for the costs of retaking and storing the Vehicle. *See* Deficiency Explanation, ¶ 7 (ECF 1-4). These costs would have already been incurred as of the Notice of Rights and Disposition, yet Biggs was not provided notice of these charges until *after* the Vehicle was prematurely sold.

The Payment History Statement of Account is equally confounding. *See generally* Payment History (ECF 36-5; 46-4). On March 26, 2018, FFS assessed a $994.43 repossession fee to Mr. Biggs' account. This is neither consistent with the Notice of Rights and Disposition nor the Deficiency Explanation. On both April 19, 2018 and April 20, 2018, FFS assessed two more fees of $914.00 each labeled as "misc non-taxable" charges. Payment History, p.1 (ECF 36-5; 46-4). While this amount correlates with the costs of retaking and storing the Vehicle in the Deficiency Explanation, there is no explanation for multiple invoiced amounts. Further adding to this confusion is the fact that all of these amounts are credited and debited on multiple lines over a series of multiple dates, and all are labeled as "invoiced" under the Payment Type column. *Id.* It is also unclear what entitlement FFS would have to a "repossession fee" when it alleges that the Vehicle was voluntarily surrendered, and Mr. Biggs disputes that FFS had any right to charge one.

The Payment History Statement of Account reflects that as of April 19, 2018 and April 20, 2018, Mr. Biggs' alleged continuing deficiency was $100,636.30. *See* Payment History, p.1 (ECF 36-5; 46-4). This amount is found nowhere on the Notice of Rights and Disposition, Deficiency Explanation, or any other documents produced by FFS or submitted as exhibits in this action.

Finally, the Payment History Statement of Account reflects that monthly payment charges to Mr. Biggs' FFS account indeed fluctuate without explanation. *See generally,* Payment History (ECF 36-5; 46-4). FFS assessed monthly payments totaling $2,812.78, $2,838.83, $2,832.32, and



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

$2,833.62 throughout the duration of Mr. Biggs' Lease. *Id.* FFS has set forth no basis in the (illegible) Lease that would entitle it to charge multiple different amounts.

The Condition Report allegedly sets forth a record of the actual damage to the Vehicle which resulted in the Vehicle being sold at such a drastic discount. *See* Condition Report (ECF 46-7). However, the Condition Report shows a mere $1,619 in repairs including reconditioning, such as a low tire pressure check, tire replacement, or curb rash repair. *See id.*; *see also* Springstroh Decl., ¶ 35. As a result, the Condition Report undermines the credibility of the FFS's Motion, which claims there was "substantial damage" to the car prior to being turned in. Springstroh Decl., ¶ 35.

The Notice of Rights and Disposition, Deficiency Explanation, and Payment History Statement of Account, in addition to the Condition Report, raise more questions than they answer. The explanations of various charges do not add up to the corresponding amounts listed; the terms describing the charges do not reflect the terms allegedly defined in the Lease; and the Payment History is incomprehensible. Based on the documents alone, it appears that FFS was randomly charging Defendant for things unsupported by the Lease, which it was able to do because of a lack of oversight. Defendant is entitled to an explanation of these discrepancies, which will likely have to be obtained by deposing FFS, due to its suspect record keeping practices.

The Court must view all facts in the light most favorable to Mr. Biggs, the non-moving party. Yet, even if the Payment History is taken as true, it means FFS has attempted to invoice Mr. Biggs' account for base rent, late charges, miscellaneous non-taxable charges, and rent due all *following* its sale of the Vehicle, none of which is permitted by law. The numerous errors and discrepancies in FFS's accounting and records made clear throughout the duration of this case represent a genuine issue of material fact which leaves the amount of FFS's deficiency claim (assuming it is entitled to any at all), in dispute.

**3. Issues of Material Fact exist as to Mr. Biggs' Counterclaims**



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

To prevail on a Washington CPA action, the plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780 (1986). The California CPA requires a similar show. While Mr. Biggs is still in the process of conducting discovery, thus far, when viewing the facts in the light most favorable to Mr. Biggs, there is evidence in this case to support all five of these elements. FFS's argument that it is entitled to summary judgment on all of Mr. Biggs' counterclaims rests on its assertions that (1) it sent Mr. Biggs all required notices and (2) it sold the Vehicle in a commercially reasonable manner, two issues that as described, are subject to genuine dispute.

As discussed above, FFS's faulty and deficient noticing practices has been a longstanding issue. Mr. Biggs' declaration confirms that he did not receive any of the alleged notices sent by FFS, and the only fact which the parties do not dispute is that Mr. Biggs never received the Notice of Rights and Deficiencies, as evidenced by the return mail received by FFS. It is also undisputed that FFS, on multiple occasions, misspelled Mr. Biggs' (simple) name and address in correspondence, notices, and searches. *See generally,* Springstroh Decl. Accordingly, issues of material fact persist as to whether FFS properly noticed Mr. Biggs prior to (and after) this lawsuit commenced. Certainly, this Court should be concerned if it is FFS's regular practice to move forward with pursuit of deficiencies when it has failed to properly notice its customers of the underlying sale, defaults, or otherwise.

FFS is a "lessor" as defined by the Vehicle Leasing Act, Civil Code section 2985.7(b), and/or subject to the same claims and defenses of the dealer pursuant to the Lease, as an "assignee" of the Lease. The Lease for the subject vehicle is a "lease contract" under the Vehicle Leasing Act, California Civil Code section 2985.7(d), and Mr. Biggs is a "lessee" as defined by the Vehicle Leasing Act, Civil Code section 2985.7(c). With respect to Mr. Biggs, FFS, unilaterally terminated the Lease prior to the scheduled termination date. Pursuant to Civil Code section 2987, FFS was required, following termination, to submit written notice, at least 10 days in advance of any



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

disposition setting forth the time and place of any public or private sale or other intended disposition of the Vehicle. Further, this written notice was required by Civil Code section 2987 to notify Biggs at his last known address of his right to "get a professional appraisal to establish the value of the vehicle" to determine the amount that Biggs allegedly owed on the Lease. FFS violated the California Vehicle Leasing Act by failing and/or refusing to notify Biggs of the time and place of any public or private sale or other intended disposition and, further, by failing to notify Biggs at his last known address of his right to an independent appraisal of the Vehicle. *See,* Biggs Decl. and Springstroh Decl. FFS further violated the CVLA by prematurely selling the vehicle prior to the date listed in the Notice that it failed to send to Biggs, and by failing to dispose of the Vehicle in a commercially reasonably manner, as evidenced by the sale price being almost half the Vehicle's current value. Biggs. Decl., 16, 17; Kalegi Decl. ¶ 12–15.

FFS is presumably treating its tens of thousands of customers equally, and accordingly its handling of Mr. Biggs lease calls into question its consumer leasing practices. The Vehicle's sale at nearly half its retail value is indicative of a failure to sell in a commercially reasonable matter, and the sale of the Vehicle was uncharacteristic of one. *See,* Kalegi Decl. at ¶ 15. Typically, a vehicle would be sent to a third-party for inspection or would be inspected by the Ferrari dealership in which it was dropped off at lease-end on behalf of FFS, and given a general valuation. *Id.* If the dealership holding the vehicle was not interested in purchasing it for resale, it would go to auction. *Id.* Here, there is no record of any such intake or valuation, and the only records available indicate that the vehicle was sold *before* auction, and before the date required by the CVLA and stated in the Notice of Rights and Deficiencies. Biggs Decl., Ex. A; Motion, 6, at footnote 3.

FFS attempts to minimize these concerns by explaining that the Vehicle was sold at a significant discount given its condition. Granger Decl., ¶ 29. In support of its contention, FFS submits a Condition Report allegedly documenting the "substantial damage" the Vehicle had sustained prior to arriving at the Ferrari dealership in Houston, Texas. Springstroh Decl., ¶ 35; *see also* Granger Decl., ¶ 37, Ex. 7 (ECF 46-7). However , the Condition Report shows only $1,619.00



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

in reconditioning costs, which includes line items such as unacceptable tire pressure and deluxe detailing, things which do not constitute damage. *See id.*; *see also* Ex. 7, pp. 4–5 (ECF 46-7). Other line items, such as tire replacement and dent repairs, would have left the Vehicle in better condition (assuming such repairs were actually needed and made, thereby undermining the theory that its condition required a significant discount. Photos of the Vehicle are included in FFS's filings, however they are small and full size photos have not been produced by FFS. Issues of fact persist concerning the Vehicle's actual condition, and whether FFS sold the Vehicle for a depressed price because its listing failed to accurately reflect its condition. Biggs Decl., ¶ 17.

Similarly, the Condition Report summarily contradicts Mr. Granger's assertion that the Vehicle was "left without a key." Springstroh Decl., ¶ 35; see also Granger Decl., ¶ 29. The Condition Report plainly lists a "Combo Key – 1" (and there is no line item for a replacement key, indicating the Vehicle came with it). *See id.*; see also Ex. 7, p. 3 (ECF 46-7). Mr. Granger has no personal knowledge of the condition the Vehicle was obtained in, and could not have acquired custodial knowledge because FFS has not produced any business records evidencing the same.

These inconsistencies are cause for concern, call FFS's consumer-related practices into serious question, creating a genuine issue of material fact on Mr. Biggs California and Washington CPA claims.

**B. FFS has not been forthcoming with respect to the facts and documents in its possession; FFS has not responded to pending discovery.**

Every new pleading and submission filed by FFS in this case has revealed new, previously undisclosed information, and, much of its newly disclosed information conflicts with its prior representations. For example:

- When FFS filed its Motion for Entry of Default Judgment Against Defendant Brent Biggs, FFS falsely claimed that it had made repeated attempts to "cajole" Mr. Biggs into curing defaults. Motion for Entry of Default Judgment Against Brent Biggs, p. 6 (ECF 14). This is impossible since FFS had never communicated with Mr. Biggs on the issue.



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

- Since the inception of this case, FFS has stated that it sent Mr. Biggs the Notice of Default on September 26, 2017 because Mr. Biggs failed to comply with the terms of the Lease. *See* Verified Complaint (ECF 1). None of FFS's pleadings, until the Opposition to the Motion to vacate ("Opposition"), acknowledged that the default was ever cured. *See* Mink Decl., ¶¶ 14–17 (ECF 36); Ex. 5–6 (ECF 36-5, 36-6). FFS only procured and presented one letter confirming an ACH payment when the evidence filed with its Opposition indicated that two separate ACH payments were made on October 6, 2017 and October 11, 2017. *See id.*

- For the first time in its Opposition, FFS acknowledged that the Notice of Rights and Disposition was incorrectly addressed. *See* Mink Decl., ¶ 24 (ECF 36); Ex. 7–8 (ECF 36-7, 36-8). FFS attempts to explain away the "inconsequential misspelling" of the city of Grapeview on the letter inside the envelope. *Id.* However, in doing so, FFS admits that the Notice of Rights and Disposition was actually returned to sender as undeliverable and logged as such by FFS's account server. *Id.*

- FFS provided evidence of a letter, which it alleges it sent to Mr. Biggs on or around November 5, 2018. Mink Decl., ¶ 31 (ECF 36); Ex. 11 (ECF 36-11). The letter contends that Mr. Biggs' payment amount under the terms of the Lease is $2,833.62 when, in fact, the Complaint states that Mr. Biggs "agreed to make monthly installment payments to FFS in the amount of $2,812.78 for sixty (60) months." *Compare* Mink Decl., Ex. 11 (ECF 36-11) *with* Verified Complaint, ¶ 7 (ECF 1); Mink Decl., ¶ 5 (ECF 36); Granger Decl., ¶ 7 (ECF 46).

- FFS now reports that when Mr. Biggs cured the default set forth in the Notice for Default, he "made the payment requested by the [Notice of Default] on October 6, 2017, which was processed on October 11, 2017." Granger Decl., ¶ 18 (ECF 46). In the Declaration of Alexandra Mink, submitted with the Opposition, Ms. Mink had attested that two separate ACH payments were made—one on October 6, 2017 and one on October 11, 2017, contradicting its earlier Opposition filing. Mink Decl., ¶¶ 14–17 (ECF 36).

- FFS contends that "the Vehicle was delivered by an unknown person in damaged condition and left without a key at a Ferrari dealership in Houston, Texas." Granger Decl., ¶ 29. After years of claiming the Vehicle was voluntarily surrendered, only now does FFS claim that it attempted to contact Mr. Biggs regarding the Vehicle and that because they failed to reach him, the Vehicle was classified as voluntarily surrendered. *Id.* at ¶¶ 29–32. Mr. Biggs disputes that anyone at FFS ever tried to contact him regarding the Vehicle.

- FFS has not provided any lease closing documents or paperwork substantiating the lease termination, any intake records or any documents evidencing voluntary surrender. Kalegi Decl., ¶ 13. It is particularly concerning if the Vehicle was, in fact, voluntarily surrendered. *Id.*



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

> Terminating a lease is not an easy process, especially if the lease was terminated well in advance of the end of the term. *Id.* at ¶ 14.

Given these numerous discrepancies in FFS's own representations made to this court, as well as the gaps in its documentation, Mr. Biggs cannot be certain that FFS's lay down discovery is complete, and has issued discovery requests to FFS for its complete file on his account and the Vehicle. These discovery requests remain pending. Summary judgment is appropriate only where the record—inclusive of pleadings, depositions, answers to interrogatories, admissions, and affidavits—show there are no genuine issues of material fact. S*ee also Anderson*, 477 U.S. at 247. Given the number of issues of material fact to be resolved, and the discovery requests and subpoenas that are pending, FFS's request for summary judgment should be denied.[2]

## IV. CONCLUSION

The fact that FFS obtained a default judgment that has since been vacated, stands in stark contrast to the amount of missing information and disputed facts that persist. FFS fails to meet its burden of establishing that it is entitled to summary judgment as a matter of law. Accordingly, Mr. Biggs respectful requests that the Court deny the Motion.

DATED this 22nd day of August, 2022.

CAIRNCROSS & HEMPELMANN, P.S.

*/s/ Binah B. Yeung*
Binah B. Yeung WSBA No. 44065
E-mail:byeung@cairncross.com
Nicole Springstroh WSBA No. 55714
E-mail:nspringstroh@cairncross.com
524 Second Avenue, Suite 500
Seattle, WA 98104-2323
Telephone: (206) 587-0700
Facsimile: (206) 587-2308
Attorneys for Defendant Brent Biggs

[2] If the Court is not inclined to deny the Motion at this juncture, Defendant requests a continuance pursuant to Fed. R. Civ. P. 56(d) is also appropriate in these circumstances.

## CERTIFICATE OF SERVICE

I, Binah B. Yeung, certify under penalty of perjury of the laws of the State of Washington that on August 22, 2022, I caused the document entitled DEFENDANT BRENT BIGGS' response in OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT be electronically filed using the CM/ECF system which will send notification of such filing to all attorneys of record.

DATED this 22nd day of August, 2022, at Seattle, Washington.

*s/ Binah B. Yeung*
Binah B. Yeung



CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308